IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DANIEL BRANDFAST, Individually and on behalf of all others similarly situated, )<br><br>Plaintiff )<br><br>v. )<br><br>PRIMERICA FINANCIAL SERVICES, INC., PRIMERICA LIFE INSURANCE, INC., PFS INVESTMENTS, INC., and PRIMERICA FINANCIAL SERVICES HOME MORTGAGES, INC., )<br><br>Defendants ) | No. 3:04-cv-551 |

## **MEMORANDUM OPINION**

This is a putative class action removed to this court from the Chancery Court of Knox County. Plaintiff purports to be the class representative of a group of insurance agents who entered into independent contractor contracts to sell the defendants' insurance products. Plaintiff seeks a declaration that those contracts were void because of lack of consideration and mutuality of obligation. Currently pending is the defendants' motion for judgment on the pleadings [Court File #5].

Because the complaint on its face fails to state a cause of action upon which relief can be granted, the motion will be granted and this action dismissed.

I.

*Factual Background*

The following factual allegations are considered in the light most favorable to the plaintiff.

The defendants (Primerica) are engaged in the business of selling life insurance and other financial products and services through a network of independent contractor sales representatives. Plaintiff Daniel Brandfast is a former sales representative for Primerica who ended his relationship with them in February 2003. Shortly after that relationship ended, Primerica sued plaintiff in Knox County Chancery Court for alleged breaches of the contracts which governed the relationship between Brandfast and Primerica between 1992 and 2003. In that lawsuit, the defenses raised by Mr. Brandfast included that the agreements in question were illusory, lacked mutuality, and were therefore unenforceable. The action in Chancery Court resulted in an injunction being entered against the plaintiff, and approximately one year later the plaintiff filed the instant case in Chancery Court, whereupon it was removed to this court.

In order to become a Primerica sales representative, the independent contractors were required to execute a "Basic Agreement." In addition, the sales representatives could also enter into agreements with other Primerica affiliates including the Massachusetts Indemnity and Life Insurance Company, Primerica Life Agent Agreement, Primerica Financial Services Home Mortgage, Inc., Originator Agreement, PSF Investments, Inc., and Registered Representative Agreement. If an agent was appointed to the Regional Vice President Level with Primerica, he or she was required to execute a Regional Vice President Agreement.

Plaintiff and Primerica executed the Basic Agreement on February 18, 1992. Plaintiff also signed the agreement with Massachusetts Indemnity and Life Insurance Company, the Regional Vice President Agreement, the Primerica Life Agent Agreement, Primerica Financial Services Home Mortgage, Inc., Originator Agreement, and the Primerica Client Services Commission Agreement.

The Massachusetts Indemnity and Life Insurance Company Agreement, Regional Vice President Agreement, Primerica Life Agent Agreement, and Primerica Financial Services Home Mortgage, Inc., and Originator Agreement provided: "the definitions in Part II of your Basic Agreement are incorporated by reference to this agreement and shall have the same effect on this agreement as if they were actually included in this agreement." Plaintiff contends that, in other words, all Primerica

3

sales representatives are required to sign the Basic Agreement and all subsequent agreements with Primerica incorporate Part II of the Basic Agreement by reference. Thus, all past and present Primerica agents, including plaintiff, are subject to the terms of Part II of the Basic Agreement. Part II of the Basic Agreement contains clauses requiring that agents signing the Basic Agreement also "sign any new form agent agreement that a PFS Company requires to be signed by the PFS sales force generally or by your particular PFS sales force designation." Further, Part II requires that the agents also "agree to know, comply with and be bound by the Operating Guidelines, which will be provided to you periodically either directly by the PFS Companies or indirectly through Regional Vice Presidents to whom you report. Operating Guidelines are contract supplements that describe or implement the right and responsibilities of all PFS agents." Further, Part II of the Basic Agreement also provided that the "PFS Company may exercise rights under this agreement without being required to enter into good faith negotiations or initiate arbitration."

Finally, Operating Guideline No. 5, issued by Primerica on July 24, 1992, states the following:

> The following applies to PFS agents under either the new or previous agent agreement:
>
> 1.   All Operating Guidelines are applicable to all agents, whether or not they have signed the new agent agreements.

4

> 2. If there is a conflict between the Operating Guidelines and any contract regulation or field bulletin, the Operating Guidelines will control both as to agents who have signed under new agreements and those agents who have not unless otherwise specified in the Operating Guidelines.

Plaintiff contends that the above provisions made these contracts illusory and without consideration on the part of Primerica. However, during the life of these agreements, plaintiff did not contend that the contracts were void or were illusory or without consideration. Rather, between 1992 and 2003, Primerica paid the plaintiff $729,731.10 in commissions pursuant to the agreements. Plaintiff did not complain that the contracts were void until defendants filed the Chancery Court lawsuit against him after he terminated his contracts with Primerica in 2003 and went to work for another company. One of the defenses raised to that lawsuit was that the agreements were void as illusory and for lack of mutuality of obligation. Plaintiff did not complain that his agreements lacked consideration on the part of Primerica until the filing of the present lawsuit in October 2004.

II

*Applicable Law*

In deciding a motion to dismiss under Rule 12(c), Federal Rules of Civil Procedure, the court will accept the facts as the plaintiff has pleaded them as true.

5

*LensCrafters, Inc. v. Sundquist*, 184 F.Supp.2d 753, 757 (M.D. Tenn. 2002). The court will not dismiss pursuant to Rule 12(c) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* A complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Performance Contracting, Inc. v. Seaboard Surety Company*, 163 F.3d 366, 369 (6th Cir. 1998). This narrow inquiry is based on whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *LensCrafters, Inc.*, 184 F.Supp.2d at 757.

III.

*Analysis*

The Tennessee Supreme Court has recognized the following with respect to the effect of full or substantial performance of a contract which may have been originally invalid for want of mutuality of obligation:

> [t]he authorities are uniform in holding that where there has been full or substantial performance by one party to a bilateral contract, [even if] originally invalid for want of mutuality of obligation, the party cannot refuse performance after receiving the promised benefits.

6

*Hoyt v. Hoyt*, 372 S.W.2d 300, 305 (Tenn. 1963). This conclusion is required by the fact that the party's performance supplies any mutuality originally absent in the contracts or by the application of settled principles of estoppel. *Id.* More recently, the Tennessee Court of Appeals has applied the same "substantial performance" rule, holding that

> [l]ack of mutuality cannot be made available for annulment of a contract if the consideration, whether of money or performance, has been paid or performed; or where there has been substantial performance by the opposite party; or where there has been a performance subsequent to the execution of the instrument.

*Parks v. Morris*, 914 S.W.2d 545, 550 (Tenn.Ct.App. 1995).

The "substantial performance" rule announced in *Hoyt* clearly applies to plaintiff's claims in this case. The agreements that plaintiff challenges as allegedly lacking mutuality were entered into in February 1992 and both Primerica and plaintiff performed without complaint under those agreements for 11 years. Primerica rendered performance by paying plaintiff over $729,000 in commissions. Plaintiff is at this point barred by the "substantial performance" rule from challenging the original enforceability of those agreements for lack of consideration or mutuality of obligation.

The appropriate time to raise the lack of consideration or mutuality of obligation was in plaintiff's answer to the lawsuit against him in state court. It is clear from reviewing the answer filed in that case that plaintiff raised lack of mutuality of obligation in his answer and could have raised lack of consideration as defenses to Primerica's breach of contract action against him. It appears in this case that this action for declaratory relief is simply an attempt to sidestep the result in the prior action where these issues were raised or should have been raised.

IV.

*Class Certification*

The plaintiff's complaint seeks to have a class of "similarly situated" individuals certified. However, it is appropriate to examine the merits of an individual plaintiff's claim prior to reaching the issue of class certification. An individual without a valid claim cannot be a proper class representative. *Miami University Wrestling Club v. Miami University*, 302 F.3d 608, 618 (6th Cir. 2002). In this case, plaintiff, because he does not state a claim upon which relief can be granted, cannot be a proper class representative.

V.

*Conclusion*

In light of the foregoing, defendants' motion for judgment on the pleadings [Court File #5] will be granted and this action dismissed.

Order accordingly.

<u>      s/  James H. Jarvis      </u>
UNITED STATES DISTRICT JUDGE

9